# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEO LY | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 19-1239 |
| UNIVERSAL PROPERTY & CASUALTY | : | |
| INSURANCE COMPANY | : | |

## MEMORANDUM

**SURRICK, J.**                                                           **MAY 7, 2021**

This case is about an insurance coverage dispute. A fire at the home of Plaintiff Leo Ly caused extensive property damage. Defendant Universal Property and Casualty Insurance Company denied Plaintiff's claim under his homeowner's insurance policy, citing to an exclusion for loss caused intentionally by the insured. Defendant believes that Plaintiff started the fire himself to recover insurance proceeds to aid with his financial distress. After his claim was denied, Plaintiff brought this lawsuit against Defendant for breach of contract and bad faith. Defendant asserts a counterclaim for insurance fraud against Plaintiff. Presently before the Court are two motions for partial summary judgment. Defendant seeks summary judgment in its favor on Plaintiff's bad faith claim. (ECF No. 50.) Plaintiff seeks summary judgment in his favor on the issue of coverage and on Defendant's insurance fraud counterclaim. (ECF No. 52.) After a through review of the records submitted by the parties, we are convinced that Defendant had a reasonable basis to conclude that Plaintiff intentionally set the fire to his home and therefore deny Plaintiff's insurance claim. Accordingly, Defendant's Motion for judgment with respect to the bad faith will be granted. Plaintiff's Motion will be denied.

# I.    BACKGROUND[1]

In 2013, Plaintiff purchased the property at 28 Henry Avenue in Feasterville-Trevose, Pennsylvania for $1.00 from his sister.  (Pl.'s 3/14/2018 Recorded Statement 3, Def.'s Mot. Ex. 2.)  Plaintiff took out a $180,000 mortgage on the property.  (*Id.* at 4.)  On May 9, 2017, Defendant issued Plaintiff a one-year insurance policy for this property.  (Policy, Def.'s Mot. Ex. 8.)  The insurance policy included an exclusion for "Intentional Loss," defined as "any loss arising out of any act an 'insured' commits or conspires to commit with the intent to cause a loss."  (*Id.* at 15.)

On Monday, March 5, 2018, at about 2:30 a.m., a neighbor observed a fire at Plaintiff's property and called 911.  (EFI Global Report 6, Def.'s Mot. Ex. 1.)  At the time, no one was at home.  (Plf.'s 3/14/2018 Recorded Statement 8.)  From 2:35 a.m. until about 5:16 a.m., firefighters quelled the fire.  (Feasterville Fire Company No. 1. Report, Plf.'s Resp. Ex. F.)  Later that morning at around 10:00 a.m., Plaintiff returned to the home upon learning that there was a fire.  (Plf.'s 3/14/2018 Recorded Statement 7-8; Plf.'s 5/23/2018 Dep. 12-13.)

After the fire, Plaintiff submitted a claim to Defendant.  (Denial Letter, Plf.'s Resp. Ex. A.)  On August 17, 2018, Defendant's claims examiner, Jennifer Russell, issued Plaintiff a letter denying the claim.  (*Id.*)  The letter explained that Defendant was denying the claim because of the policy's "Intentional Loss" exclusion and because of insurance fraud.  (*Id.*)  The letter indicated that Defendant came to this conclusion after reviewing a real estate contract, mortgage documents, utility records, phone records, bank statements, E-ZPass records, and property tax records, and after interviewing several individuals, including Plaintiff, Yan R. Chiu, several of

---

[1] We view the facts and reasonable inferences therefrom in the light most favorable to Plaintiff as the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Plaintiff's neighbors, and the Lower Southampton Township Fire Marshal. (*Id.*) The letter also explained that Plaintiff had "the opportunity and the motive to start the fire." (*Id.*)

In his two-count Complaint, Plaintiff asserts claims against Defendant for breach of contract (Count I) and bad faith in violation of 42 Pa. Cons. Stat. § 8371 (Count II). Defendant asserts a counterclaim of insurance fraud against Plaintiff.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson*, 477 U.S. at 248). "[A] factual dispute is material only if it might affect the outcome of the suit under governing law." *Id.* The court must view the evidence in the light most favorable to the non-moving party. *Galena v. Leone,* 638 F.3d 186, 196 (3d Cir. 2011). However, "unsupported assertions, conclusory allegations, or mere suspicions" are insufficient to overcome a motion for summary judgment. *Schaar v. Lehigh Valley Health Servs., Inc.*, 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989)).

Where the nonmoving party bears the burden of proof at trial, the moving party may identify an absence of a genuine issue of material fact by showing the court that there is no evidence in the record supporting the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). If the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c) ("A party asserting

that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record. . . ."); *see also Matsushita Elec. Indus. Co., v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986) (noting that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## III. DISCUSSION

Defendant seeks summary judgment in its favor on the bad faith claim. Plaintiff seeks summary judgment in his favor on the issue of coverage and requests dismissal of Defendant's counterclaim with prejudice. We address each Motion in turn.

### A. Defendant's Motion for Partial Summary Judgment

Plaintiff argues that Defendant denied his insurance claim in bad faith. Under Pennsylvania's bad faith statute:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. § 8371. To prevail on a bad faith claim, "the plaintiff must present clear and convincing evidence (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis." *Rancosky v. Wash. Nat'l Ins. Co*., 170 A.3d 364, 365 (Pa. 2017) (adopting the two-prong test from *Terletsky v. Prudential Property & Cas. Ins. Co.*, 649 A.2d 680 (Pa. Super.

Ct. 1994)). "[P]roof of an insurer's motive of self-interest or ill-will, while potentially probative of the second prong, is not a mandatory prerequisite to bad faith recovery under Section 8371." *Rancosky*, 170 A.3d at 377. "'Clear and convincing evidence' has been defined as 'evidence that is so clear and direct as to permit the trier of fact to reach a clear conviction, without hesitancy, as to the truth of the facts at issue.'" *Mateskovich v. Commonwealth*, 755 A.2d 100, 103 n.1 (Pa. Commw. Ct. 2000) (quoting *Sharon Steel Corporation v. Workmen's Compensation Appeal Board (Myers)*, 670 A.2d 1194, 1199 (Pa. Commw. Ct. 1996), *petition for allowance of appeal denied*, 678 A.2d 368 (Pa. 1996)).

Defendant argues that summary judgment should be entered in its favor on the bad faith claim because Plaintiff has failed to establish the first prong, i.e., that Defendant did not have a reasonable basis for denying Plaintiff's claim for benefits. Defendant contends that it did have a reasonable basis for denying Plaintiff's claim. We agree.

"[W]hether the insurer had a reasonable basis for denying benefits, is an objective inquiry into whether a reasonable insurer would have denied payment of the claim under the facts and circumstances presented." *Rancosky*, 170 A.3d at 374. "A court should examine the factors that the insurer relied on in evaluating a claim to determine whether the insurer had a reasonable basis for denying benefits." *Davis v. Nationwide Mut. Ins. Co.*, 228 F. Supp. 3d 386, 388 (E.D. Pa. 2017) (citing *Terletsky*, 649 A.2d at 688-89).

After Plaintiff submitted his claim for benefits, Defendant conducted an investigation into the cause of the fire. During that investigation, Defendant reviewed a real estate contract, mortgage documents, utility records, phone records, bank statements, E-ZPass records, and property tax records, and Defendant interviewed several individuals, including Plaintiff, Plaintiff's prospective buyer, several of Plaintiff's neighbors, and the Lower Southampton

Township Fire Marshal. Based on that investigation, Defendant concluded that Plaintiff had intentionally set the fire.

We have reviewed documents from that record that were submitted by the parties. Based on all the information before Defendant at the time, Defendant's conclusion that Plaintiff had intentionally set the fire was not unreasonable. There is substantial evidence in that record that reasonably leads to the conclusion that the fire was intentionally set, and that Plaintiff had both the motive and the opportunity to intentionally set it.

To begin with, the record contains considerable evidence that the fire was intentionally set. For example, during the fire, an arson canine unit "alerted at 3 locations." (EFI Global Report 6; *see also* Russell Dep. 25, Plf.'s Resp. Ex. H.) In addition, the Fire Marshal of the Lower Southampton Township noted that the fire had "two separate and unconnected areas of origin" and opined that "someone threw something through the window and onto the rear porch."[2] (EFI Global Report 6.) At the time, a criminal investigation into the fire was ongoing. (EFI Global Report 6; Russell Dep. 44.)

Also, Defendant hired EFI Global to conduct an origin and cause investigation of the fire. After examining the property damage, EFI Global concluded that the fire was intentionally set.[3]

---

[2] Plaintiff argues that we should not consider these statements from the Fire Marshal because they are inadmissible hearsay. Plaintiff is mistaken. These statements are not being offered for the truth of the matter asserted. Rather, they are being offered as evidence of Defendant's state of mind at the time it denied Plaintiff's claim. *See* Fed. R. Evid. 801(c)(2).

[3] Plaintiff argues that we should not consider the EFI Global Report because it is a "net opinion." (Plf.'s Mot. 2-3.) We disagree.

Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(EFI Global Report 7.)  EFI Global came to this conclusion even though samples taken from the property tested negative for ignitable liquid residue.  (*Id*. at 25.)  EFI Global reasoned that "[t]he failure to demonstrate the presence of an ignitable liquid does not preclude the presence of one, it is merely a statement that none was found in that particular sample."  (*Id*. at 5.)  EFI Global also examined and ruled out potential accidental ignition sources, such as the electrical wiring and receptacle, the roof, the electrical panel, the heat plant, and the light fixtures.  (*Id*. at 5-8.)  In addition, EFI Global observed that "[n]o smoke alarms were found in the dwelling."  (*Id*. at 2.)

The record also contains significant evidence that Plaintiff had a financial motive for intentionally setting his property on fire.  Plaintiff's tax returns show little to no income in 2015 and 2016.  (Plf.'s 2015 Tax Returns, Def.'s Mot. Ex. 9; Plf.'s 2016 Tax Returns, Def.'s Mot. Ex. 10.)  Plaintiff's property tax records show that he did not pay his property taxes in 2016 or 2017.  (Plf.'s Property Tax Records, Def.'s Mot. Ex. 11.)  Plaintiff had also missed a couple payments on his mortgage just prior to the fire.  (Plf.'s 8/7/2018 Dep. 41-43, Def.'s Mot. Ex. 4; *see also*

---

(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Under Rule 702, "a district court must ensure that all expert testimony is relevant and reliable.  In considering the reliability of testimony on causation, a court should consider whether the expert has adequately accounted for obvious alternative explanations." *Miller v. United States*, 287 F. App'x 982, 984 (3d Cir. 2008) (internal citations and quotation marks omitted).

The EFI Global Report indicates that the investigator reviewed witness statements, questioned the Fire Marshal, examined the property, collected samples for testing, and photographed the damage.  (EFI Global Report 2-25.)  It also reveals that the investigator considered and ruled out alternative explanations for the fire.  For example, the investigator examined the electrical wiring and receptacle, the roof, the electrical panel, the heat plant, and the light fixtures for potential accidental ignition sources.  (*Id*. at 5-8.)  The EFI Global Report satisfies Rule 702, and it was reasonable for Defendant to rely on it when Defendant denied Plaintiff's claim.  Plaintiff may contest the weight and credibility of the report at trial.  Our review of the report for purposes of summary judgment is entirely proper.

Zhu Dep. 15, Def.'s Mot. Ex. 12.)  His bank records from March 2018 show that his checking

account at times was overdrawn.  (Plf.'s Wells Fargo checking account summary, Def.'s Mot.

Ex. 6.)

Finally, the record contains substantial evidence that Plaintiff had the opportunity to

intentionally set his property on fire.  Twice, under oath, Plaintiff testified that he was in Atlantic

City, New Jersey at the Golden Nugget Casino and Hotel from March 3, 2018 through March 5,

2018 at about 10:00 a.m.  He testified that at no point during that time did he return to

Feasterville, Pennsylvania.  (Plf.'s 5/23/2018 Dep. 5-11, 25; Plf.'s 8/7/2018 Dep. 13.)  However,

Plaintiff's E-ZPass and bank records reasonably suggest otherwise.

Plaintiff testified that he drove his Honda Accord to Atlantic City on March 3, 2018.

(Plf.'s 8/7/2018 Dep. 11.)  He also testified that his Honda Accord was equipped with an E-

ZPass transponder for tolls.  (*Id*. at 13.)  Plaintiff further testified that this E-ZPass transponder

stayed in his vehicle the entire weekend and that no one else drove his vehicle that weekend.  (*Id*.

at 13-15.)  Interestingly, Plaintiff's E-ZPass records reveal that on March 5, 2018 at 12:52 a.m.

his vehicle travelled through the Egg Harbor Mainline Barrier Exit.  (Plf.'s E-ZPass Records 4,

Def.'s Mot. Ex. 5.)  Plaintiff does not know "why [his] E-ZPass was at the Egg Harbor Mainline

Barrier" at that time.  (Plf.'s 8/7/2018 Dep. 21.)

Also, Plaintiff testified that he had a Wells Fargo checking account.  He testified that he

had only one bank card for this account and that no one else had access to his bank card.  (*Id*. at

13-14.)  Plaintiff's bank records show a cash deposit of $2,400 on March 4, 2018, time unknown,

at a Wells Fargo branch in Feasterville, Pennsylvania.  (Plf.'s Wells Fargo checking account

summary.)  Plaintiff testified he does not "remember that deposit" nor does he "know who made

that deposit."  (Plf.'s 8/7/2018 Dep. 16.)

Even when faced with all this evidence, Plaintiff still argues that Defendant acted in bad faith when it disregarded the potentially exculpatory significance of the negative test results and allegedly failed to provide those results to Plaintiff. Plaintiff is mistaken. The issue is not whether some evidence in the Defendant's record supported coverage; the issue is whether the Defendant's record as a whole reasonably justified denial of coverage. "It is easy to focus on the details of [the insurer's] claims handling. But we must keep in mind the larger picture." *Bodnar v. Nationwide Mut. Ins. Co.*, No. 12-01337, 2015 U.S. Dist. LEXIS 124504, at *49 (M.D. Pa. Sep. 15, 2015), *aff'd*, 2016 U.S. App. LEXIS 17903 (3d Cir. Pa., Oct. 4, 2016); *see*, *e.g.*, *Merrone v. Allstate Vehicle & Prop. Ins. Co.*, No. 18-193, 2019 U.S. Dist. LEXIS 181450, at *18 (W.D. Pa. Oct. 21, 2019) ("The fact that Allstate lacked an opinion from a professional investigator as to the fire's origin and cause does not mean that Allstate would be unable to prove arson with other evidence."); *Kubrick v. Allstate Ins. Co. (In re Estate of Kubrick)*, No. 01-6541, 2004 U.S. Dist. LEXIS 358, at *41 n.13 (E.D. Pa. Jan. 7, 2004), *aff'd*, 2005 U.S. App. LEXIS 1440 (3d Cir. Pa., Jan. 28, 2005) ("There exists contrary evidence that Timothy did, in fact, reside in his father's house in Lackawanna County, and that Timothy was not driving the Dodge Demon at the time of the accident. Nonetheless, given the substantial contradictory evidence concerning these important questions, the Court cannot conclude that Allstate acted unreasonably when it undertook a formal investigation of these issues.") (internal citations omitted).

In sum, based on all the information before Defendant at the time, Defendant's conclusion that Plaintiff had intentionally set the fire was not unreasonable. The canine alert coupled with the Fire Marshal's observations and the EFI Global Report suggest that the fire was intentionally set. Plaintiff's financial records suggest that Plaintiff needed money. Plaintiff's E-

ZPass and bank records suggest that he was in the vicinity of his property at the time the fire began.  *See*, *e.g.*, *Merrone*, 2019 U.S. Dist. LEXIS 181450, at *17-18 ("The fire marshal was investigating the fire and had asked [Plaintiff's daughter] to submit to a polygraph test, and Plaintiff had a financial motive to start a fire in her house.  It is a reasonable inference from these circumstances that arson may have been the cause of the fire."); *Verdetto v. State Farm Fire & Cas. Co.*, 837 F. Supp. 2d 480, 484 (M.D. Pa. 2011), *aff'd*, 2013 U.S. App. LEXIS 1372 (3d Cir. Pa., Jan. 17, 2013) ("Here, the existence of a number of significant 'red flags' provided State Farm a reasonable basis for investigating the claim, including: the fire being ruled an arson; the claim being on a policy less than six months old; and the history of late payments on the policy.").

Because Plaintiff has not shown by clear and convincing evidence that Defendant lacked a reasonable basis to deny the claim, Defendant is entitled to summary judgment in its favor on the bad faith claim.  Accordingly, Defendant's motion will be granted.  The bad faith claim is dismissed.

### B.     Plaintiff's Motion for Partial Summary Judgment

Plaintiff argues that he is entitled to summary judgment in his favor on the issue of coverage and that Defendant's counterclaim of insurance fraud should be dismissed.[4]  As noted above, Defendant's basis for denying coverage was not unreasonable.  Our analysis with respect to the bad faith claim further supports our conclusion here.  Plaintiff's Motion should be denied.

---

[4] In Pennsylvania, a person commits insurance fraud if he "[k]nowingly and with the intent to defraud any insurer or self-insured, presents or causes to be presented to any insurer or self-insured any statement forming a part of, or in support of, a claim that contains any false, incomplete or misleading information concerning any fact or thing material to the claim."  18 Pa. Cons. Stat. § 4117.

After reviewing all the documents submitted by the parties, Plaintiff's entitlement to coverage continues to be questionable. For instance, although the records of Plaintiff's account at the Golden Nugget Hotel confirm that Plaintiff stayed there from March 3, 2018 through March 5, 2018, Plaintiff's account at the Golden Nugget Casino reveals that Plaintiff had no gambling activity for about seven and a half hours from March 4, 2018 at 5:54 p.m. until March 5, 2018 at 1:29 a.m.[5] (Plf.'s Golden Nugget Records, Def.'s Mot. Ex. 7.) During those seven and a half hours leading up to the fire, Plaintiff's whereabouts are unaccounted for. Even Plaintiff cannot recall exactly where he was at that time. When questioned, Plaintiff testified both that he was "probably" fishing and that "I did not go fishing." (Plf.'s 8/7/2018 Dep. 20-21.) He then explained, "I don't remember. I might have just go[ne] out to get my daughter stuff or something, you know. I don't remember what I [was] doing." (*Id*. at 21.)

In addition, although the Feasterville Fire Company No. 1 Report notes "Human Factors Contributing None," it also lists the cause of ignition as "Cause under investigation" and notes under the arson section "Investigation open" and "Under Investigation by Lower Southampton Fire Marshall."[6] (Feasterville Fire Company No. 1 Report, Plf.'s Resp. Ex. F.)

Having determined that it was not unreasonable for Defendant to conclude that Plaintiff had intentionally set his property on fire, the issue of coverage is not appropriate for this Court to decide on summary judgment. Nor is there a basis for dismissing Defendant's counterclaim of insurance fraud at this juncture. These issues are more appropriate for a jury. Accordingly, Plaintiff's Motion will be denied.

---

[5] Defendant had not reviewed the Golden Nugget Casino and Hotel records prior to issuing the denial letter. (Russell Dep. 63-65.)

[6] Defendant had not reviewed the Feasterville Fire Company No. 1 Report prior to issuing the denial letter. (Russell Dep. 65-66.)

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment will be granted, and Plaintiff's Motion for Partial Summary Judgment will be denied.  Plaintiff's bad faith claim will be dismissed.

An appropriate Order follows.

**BY THE COURT:**

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**